# EXHIBIT 1

## NONCOMPETITION AND NONSOLICITATION AGREEMENT

THIS NONCOMPETITION AND NONSOLICITATION AGREEMENT is made and entered into as of February 18, 1998, by and between North Carolina Trust Company, a North Carolina corporation (the "Trust Company"), and M. JO BROOKS, an officer and employee of the Trust Company ("Employee").

### RECITAL

On February 18, 1998, the Board of Directors of NCT Holdings, Inc. (of which the Trust Company is a wholly owned subsidiary) granted a stock option to Employee in recognition of Employee's value as an officer and key management employee of the Trust Company. The grant was made subject to the Employee entering into this Agreement and agreeing to the restrictions on competition and solicitation set forth herein.

NOW, THEREFORE, in consideration of the stock option granted to Employee and in consideration of the execution and delivery by NCT Holdings, Inc. of the Stock Option Agreement of even date herewith evidencing the option, Employee agrees as follows:

1.   Definitions.

(a)   "Company Fiduciary Business" shall mean the business of providing fiduciary services to individuals, trusts, estates, foundations and other nonprofit entities, employee benefit plans, and corporations, partnerships and other business entities throughout North Carolina and in other states, and each and every material aspect of providing such fiduciary services.

(b)   "Company Investment Management Business" shall mean the business of providing investment management services to individuals, trusts, estates, foundations and other nonprofit entities, employee benefit plans, and corporations, partnerships and other business entities throughout North Carolina and in other states, and each and every material aspect of providing such investment management services.

(c)   "Restricted Territory" shall mean the State of North Carolina.

(d)   "Restricted Client" shall mean each person (including, without limitation, each individual, trust, trustee, estate, executor, foundation or other nonprofit entity, employee benefit plan, and corporation, partnership or other business entity) (i) who is a client of the Trust Company at the time of termination of Employee's employment or (ii) who was a client at any time during the one-year period prior to the termination of Employee's employment or (iii) who

1

at the time of termination of Employee's employment was a prospective client listed on the Trust Company's "highest priority" prospect list or its "work-in-process" prospect list.

(e) "Restricted Territory Client" shall mean a Restricted Client having a residence in the Restricted Territory (in the case of an individual) or having a place of business in the Restricted Territory (in the case of an entity).

2. Restrictions on Competition and Solicitation. During Employee's employment by the Trust Company and, if Employee terminates employment with the Trust Company voluntarily or if the employment of Employee is terminated by the Trust Company for cause, as determined in good faith by the Board of Directors of the Trust Company, for a period of 12 months following such termination:

(a) Employee will not, directly or indirectly through others, within the Restricted Territory:

(i) Engage in the Company Fiduciary Business or any material aspect thereof for Employee's own account, as an employee or in any other capacity, including, without limitation, as a partner, officer, director, member, manager, principal, agent, trustee or consultant; or

(ii) Engage in the Company Investment Management Business or any material aspect thereof for Employee's own account, as an employee or in any other capacity, including, without limitation, as a partner, officer, director, member, manager, principal, agent, trustee or consultant;

provided, however, that nothing herein shall prevent Employee from being employed by or affiliated with any person or entity if Employee's duties and responsibilities for such person or entity are unrelated to any material aspect of the Company Fiduciary Business or the Company Investment Management Business and provided further that nothing herein shall prevent Employee from being a passive investor in any entity; and

(b) Employee will not, directly or indirectly through others, within the Restricted Territory or elsewhere:

(i) Provide investment management services or fiduciary services of the type then offered by the Trust Company to or for any Restricted Client or supervise, manage or otherwise assist in the rendering of any such services to or for a Restricted Client;

(ii) Provide investment management services or fiduciary services of the type then offered by the Trust Company to or for any Restricted Territory Client or supervise, manage or otherwise assist in the rendering of any such services to or for a Restricted Territory Client;

2

(iii)    Call upon or cause to be called upon, or solicit or assist in the solicitation of, any Restricted Client for the purpose of providing to the Restricted Client any investment management services or fiduciary services of the type then offered by the Trust Company;

(iv)    Call upon or cause to be called upon, or solicit or assist in the solicitation of, any Restricted Territory Client for the purpose of providing to the Restricted Territory Client any investment management services or fiduciary services of the type then offered by the Trust Company;

(v)    Influence or persuade or attempt to influence or persuade any Restricted Client to terminate his, her or its relationship with the Trust Company or otherwise interfere or attempt to interfere with the relationship between the Trust Company and any Restricted Client;

(vi)    Influence or persuade or attempt to influence or persuade any Restricted Territory Client to terminate his, her or its relationship with the Trust Company or otherwise interfere or attempt to interfere with the relationship between the Trust Company and any Restricted Territory Client; or

(vii)    Call upon or cause to be called upon, or solicit or assist in the solicitation of, any employee of the Trust Company for the purpose of persuading or influencing the employee to terminate his or her employment with the Trust Company;

Each of the foregoing covenants in this Section 2 is separate and independent, and the invalidity or unenforceability of one or more of these covenants shall not affect the validity or enforceability of any remaining covenant.

3.    Acknowledgments. Employee acknowledges that (a) as an officer and key management employee of the Trust Company, Employee has access to the Trust Company's client lists, operational methods and processes, marketing plans and strategies, product development plans and strategies and other similar information and that the Trust Company would suffer a competitive disadvantage in the event of Employee's involvement in the Company Fiduciary Business, the Company Investment Management Business or any material aspect thereof in the Restricted Territory during the 12-month period following termination of employment; (b) client relationships and the goodwill associated therewith and employee relationships and the goodwill associated therewith are valuable assets of the Trust Company; and (c) the Trust Company's primary client base is in the State of North Carolina but the nature of its business and the technology in which it has invested permits the Trust Company to serve clients in other states, including, but not limited to, Virginia, South Carolina, Florida and Tennessee. Employee further acknowledges having the ability, skills and experience to support

3

himself or herself other than by engaging in the Company Fiduciary Business or the Company Investment Management Business.

4.    Reasonableness of Restrictions: Blue Pencil Doctrine. Employee agrees that the restrictions on competition and solicitation set forth in this Agreement are reasonable in scope, in time, in territory and in all other respects and are reasonable and necessary to protect legitimate competitive interests and client and employee relationships of the Trust Company. Employee further acknowledges the uncertainty of the law respecting restrictions on competition and solicitation and expressly agrees that this Agreement shall be given the construction that renders its provisions valid and enforceable to the maximum extent (not exceeding its express terms) possible under applicable law. Without limiting the generality of the foregoing agreement by Employee, if the duration or geographical extent of, or business activities covered by, this Agreement are in excess of what is valid and enforceable under applicable law, then the duration, geographical extent or business activities shall be reduced or limited to the extent necessary so that this Agreement will be valid and enforceable.

5.    Remedies: Tolling. If Employee breaches, or threatens to breach, any of the restrictions on competition and solicitation contained in this Agreement (the "Restrictions"), the Trust Company shall have the following rights and remedies, each of which shall be independent of the others and severally enforceable, and each of which is in addition to, and not in lieu of, any other rights and remedies available to the Trust Company under law or in equity:

      (a)    The right to have an injunction issued by any court of competent jurisdiction for the purpose of specifically enforcing the Restrictions, it being agreed that any breach or threatened breach would cause irreparable injury to the Trust Company and that money damages would not provide an adequate remedy;

      (b)    The right to other equitable relief, including without limitation the right to an accounting with respect to all compensation, profits, and other benefits derived or received by the Employee (or by any person, firm, corporation or other entity on whose behalf the Employee acted) as the result of any breach of the Restrictions; and

      (c)    The right to recover from Employee such reasonable attorneys' fees and other costs and expenses as the Trust Company may incur in enforcing this Agreement.

If Employee shall violate any of the Restrictions, such violation shall toll the running of the twelve-month period described in Section 2 above from the date of the violation until the violation shall cease.

6.    Change in Control. Notwithstanding the foregoing provisions of this Agreement, all obligations of Employee under this Agreement shall terminate upon a "Change in Control of the Trust Company." A "Change in Control of the Trust Company" shall be deemed to have occurred if (a) any "person" (as such term is used in Sections 13(d) and 14(d) of the Securities Exchange Act of 1934) other than NCT Holdings, Inc. becomes the beneficial owner, directly or

4

indirectly, of more than 66-2/3% of the combined voting power of the Trust Company's outstanding securities having the right to vote at elections of directors or (b) at any election of directors of the Trust Company, the majority of those directors in office immediately before the election are not reelected, unless the election of each director who was not a director immediately before the election was approved in advance by at least a two-thirds majority of those directors who were in office immediately before the election.

7.    Entire Agreement. This Agreement contains the entire agreement and understanding of the parties with respect to noncompetition and nonsolicitation and supersedes and replaces all prior agreements and understandings with respect thereto; provided, however, that all prior agreements between Employee and the Trust Company with respect to confidentiality and nondisclosure shall remain in full force and effect.

8.    No Employment Contract. Nothing contained in this Agreement shall affect the at-will nature of the Employee's employment and the right of the Trust Company or the right of Employee to terminate Employee's employment at any time and for any reason or no reason.

9.    Miscellaneous. This Agreement shall inure to the benefit of the Trust Company and its successors and assigns and shall be construed in accordance with and governed by the laws of the State of North Carolina.

IN WITNESS WHEREOF, this Agreement is signed by Employee as of the day first above written.

_M. Jo Brooks_

M. JO BROOKS

## ACKNOWLEDGMENT

Employee hereby acknowledges receipt from NCT Holdings, Inc. of a Stock Option Agreement covering 2,000 shares of its Class A Common Stock.

_M. Jo Brooks_

M. JO BROOKS

5

## NONCOMPETITION AND NONSOLICITATION AGREEMENT

THIS NONCOMPETITION AND NONSOLICITATION AGREEMENT is made and entered into as of February 18, 1998, by and between North Carolina Trust Company, a North Carolina corporation (the "Trust Company"), and GLENDA R. BURKETT, an officer and employee of the Trust Company ("Employee").

### RECITAL

On February 18, 1998, the Board of Directors of NCT Holdings, Inc. (of which the Trust Company is a wholly owned subsidiary) granted a stock option to Employee in recognition of Employee's value as an officer and key management employee of the Trust Company. The grant was made subject to the Employee entering into this Agreement and agreeing to the restrictions on competition and solicitation set forth herein.

NOW, THEREFORE, in consideration of the stock option granted to Employee and in consideration of the execution and delivery by NCT Holdings, Inc. of the Stock Option Agreement of even date herewith evidencing the option, Employee agrees as follows:

1.   Definitions.

(a)   "Company Fiduciary Business" shall mean the business of providing fiduciary services to individuals, trusts, estates, foundations and other nonprofit entities, employee benefit plans, and corporations, partnerships and other business entities throughout North Carolina and in other states, and each and every material aspect of providing such fiduciary services.

(b)   "Company Investment Management Business" shall mean the business of providing investment management services to individuals, trusts, estates, foundations and other nonprofit entities, employee benefit plans, and corporations, partnerships and other business entities throughout North Carolina and in other states, and each and every material aspect of providing such investment management services.

(c)   "Restricted Territory" shall mean the State of North Carolina.

(d)   "Restricted Client" shall mean each person (including, without limitation, each individual, trust, trustee, estate, executor, foundation or other nonprofit entity, employee benefit plan, and corporation, partnership or other business entity) (i) who is a client of the Trust Company at the time of termination of Employee's employment or (ii) who was a client at any time during the one-year period prior to the termination of Employee's employment or (iii) who

1

Case 3:07-cv-00498-GCM   Document 1-1   Filed 11/21/07   Page 7 of 42

at the time of termination of Employee's employment was a prospective client listed on the Trust Company's "highest priority" prospect list or its "work-in-process" prospect list.

(e)     "Restricted Territory Client" shall mean a Restricted Client having a residence in the Restricted Territory (in the case of an individual) or having a place of business in the Restricted Territory (in the case of an entity).

2.     Restrictions on Competition and Solicitation.  During Employee's employment by the Trust Company and, if Employee terminates employment with the Trust Company voluntarily or if the employment of Employee is terminated by the Trust Company for cause, as determined in good faith by the Board of Directors of the Trust Company, for a period of 12 months following such termination:

(a)     Employee will not, directly or indirectly through others, within the Restricted Territory:

(i)     Engage in the Company Fiduciary Business or any material aspect thereof for Employee's own account, as an employee or in any other capacity, including, without limitation, as a partner, officer, director, member, manager, principal, agent, trustee or consultant; or

(ii)     Engage in the Company Investment Management Business or any material aspect thereof for Employee's own account, as an employee or in any other capacity, including, without limitation, as a partner, officer, director, member, manager, principal, agent, trustee or consultant;

provided, however, that nothing herein shall prevent Employee from being employed by or affiliated with any person or entity if Employee's duties and responsibilities for such person or entity are unrelated to any material aspect of the Company Fiduciary Business or the Company Investment Management Business and provided further that nothing herein shall prevent Employee from being a passive investor in any entity; and

(b)     Employee will not, directly or indirectly through others, within the Restricted Territory or elsewhere:

(i)     Provide investment management services or fiduciary services of the type then offered by the Trust Company to or for any Restricted Client or supervise, manage or otherwise assist in the rendering of any such services to or for a Restricted Client;

(ii)     Provide investment management services or fiduciary services of the type then offered by the Trust Company to or for any Restricted Territory Client or supervise, manage or otherwise assist in the rendering of any such services to or for a Restricted Territory Client;

2

(iii)     Call upon or cause to be called upon, or solicit or assist in the solicitation of, any Restricted Client for the purpose of providing to the Restricted Client any investment management services or fiduciary services of the type then offered by the Trust Company;

(iv)     Call upon or cause to be called upon, or solicit or assist in the solicitation of, any Restricted Territory Client for the purpose of providing to the Restricted Territory Client any investment management services or fiduciary services of the type then offered by the Trust Company;

(v)     Influence or persuade or attempt to influence or persuade any Restricted Client to terminate his, her or its relationship with the Trust Company or otherwise interfere or attempt to interfere with the relationship between the Trust Company and any Restricted Client;

(vi)     Influence or persuade or attempt to influence or persuade any Restricted Territory Client to terminate his, her or its relationship with the Trust Company or otherwise interfere or attempt to interfere with the relationship between the Trust Company and any Restricted Territory Client; or

(vii)     Call upon or cause to be called upon, or solicit or assist in the solicitation of, any employee of the Trust Company for the purpose of persuading or influencing the employee to terminate his or her employment with the Trust Company;

Each of the foregoing covenants in this Section 2 is separate and independent, and the invalidity or unenforceability of one or more of these covenants shall not affect the validity or enforceability of any remaining covenant.

3.     Acknowledgments.  Employee acknowledges that (a) as an officer and key management employee of the Trust Company, Employee has access to the Trust Company's client lists, operational methods and processes, marketing plans and strategies, product development plans and strategies and other similar information and that the Trust Company would suffer a competitive disadvantage in the event of Employee's involvement in the Company Fiduciary Business, the Company Investment Management Business or any material aspect thereof in the Restricted Territory during the 12-month period following termination of employment; (b) client relationships and the goodwill associated therewith and employee relationships and the goodwill associated therewith are valuable assets of the Trust Company; and (c) the Trust Company's primary client base is in the State of North Carolina but the nature of its business and the technology in which it has invested permits the Trust Company to serve clients in other states, including, but not limited to, Virginia, South Carolina, Florida and Tennessee.  Employee further acknowledges having the ability, skills and experience to support

3

himself or herself other than by engaging in the Company Fiduciary Business or the Company Investment Management Business.

4.    Reasonableness of Restrictions: Blue Pencil Doctrine. Employee agrees that the restrictions on competition and solicitation set forth in this Agreement are reasonable in scope, in time, in territory and in all other respects and are reasonable and necessary to protect legitimate competitive interests and client and employee relationships of the Trust Company. Employee further acknowledges the uncertainty of the law respecting restrictions on competition and solicitation and expressly agrees that this Agreement shall be given the construction that renders its provisions valid and enforceable to the maximum extent (not exceeding its express terms) possible under applicable law. Without limiting the generality of the foregoing agreement by Employee, if the duration or geographical extent of, or business activities covered by, this Agreement are in excess of what is valid and enforceable under applicable law, then the duration, geographical extent or business activities shall be reduced or limited to the extent necessary so that this Agreement will be valid and enforceable.

5.    Remedies: Tolling. If Employee breaches, or threatens to breach, any of the restrictions on competition and solicitation contained in this Agreement (the "Restrictions"), the Trust Company shall have the following rights and remedies, each of which shall be independent of the others and severally enforceable, and each of which is in addition to, and not in lieu of, any other rights and remedies available to the Trust Company under law or in equity:

(a)    The right to have an injunction issued by any court of competent jurisdiction for the purpose of specifically enforcing the Restrictions, it being agreed that any breach or threatened breach would cause irreparable injury to the Trust Company and that money damages would not provide an adequate remedy;

(b)    The right to other equitable relief, including without limitation the right to an accounting with respect to all compensation, profits, and other benefits derived or received by the Employee (or by any person, firm, corporation or other entity on whose behalf the Employee acted) as the result of any breach of the Restrictions; and

(c)    The right to recover from Employee such reasonable attorneys' fees and other costs and expenses as the Trust Company may incur in enforcing this Agreement.

If Employee shall violate any of the Restrictions, such violation shall toll the running of the twelve-month period described in Section 2 above from the date of the violation until the violation shall cease.

6.    Change in Control. Notwithstanding the foregoing provisions of this Agreement, all obligations of Employee under this Agreement shall terminate upon a "Change in Control of the Trust Company." A "Change in Control of the Trust Company" shall be deemed to have occurred if (a) any "person" (as such term is used in Sections 13(d) and 14(d) of the Securities Exchange Act of 1934) other than NCT Holdings, Inc. becomes the beneficial owner, directly or

4

indirectly, of more than 66-2/3% of the combined voting power of the Trust Company's outstanding securities having the right to vote at elections of directors or (b) at any election of directors of the Trust Company, the majority of those directors in office immediately before the election are not reelected, unless the election of each director who was not a director immediately before the election was approved in advance by at least a two-thirds majority of those directors who were in office immediately before the election.

7. <u>Entire Agreement</u>. This Agreement contains the entire agreement and understanding of the parties with respect to noncompetition and nonsolicitation and supersedes and replaces all prior agreements and understandings with respect thereto; provided, however, that all prior agreements between Employee and the Trust Company with respect to confidentiality and nondisclosure shall remain in full force and effect.

8. <u>No Employment Contract</u>. Nothing contained in this Agreement shall affect the at-will nature of the Employee's employment and the right of the Trust Company or the right of Employee to terminate Employee's employment at any time and for any reason or no reason.

9. <u>Miscellaneous</u>. This Agreement shall inure to the benefit of the Trust Company and its successors and assigns and shall be construed in accordance with and governed by the laws of the State of North Carolina.

IN WITNESS WHEREOF, this Agreement is signed by Employee as of the day first above written.

*Glenda R. Burkett*

GLENDA R. BURKETT

## ACKNOWLEDGMENT

Employee hereby acknowledges receipt from NCT Holdings, Inc. of a Stock Option Agreement covering 1,000 shares of its Class A Common Stock.

*Glenda R. Burkett*

GLENDA R. BURKETT

5

## NONCOMPETITION AND NONSOLICITATION AGREEMENT

THIS NONCOMPETITION AND NONSOLICITATION AGREEMENT is made and entered into as of February 18, 1998, by and between North Carolina Trust Company, a North Carolina corporation (the "Trust Company"), and ANTHONY P. MONFORTON, an officer and employee of the Trust Company ("Employee").

### RECITAL

On February 18, 1998, the Board of Directors of NCT Holdings, Inc. (of which the Trust Company is a wholly owned subsidiary) granted a stock option to Employee in recognition of Employee's value as an officer and key management employee of the Trust Company. The grant was made subject to the Employee entering into this Agreement and agreeing to the restrictions on competition and solicitation set forth herein.

NOW, THEREFORE, in consideration of the stock option granted to Employee and in consideration of the execution and delivery by NCT Holdings, Inc. of the Stock Option Agreement of even date herewith evidencing the option, Employee agrees as follows:

1. Definitions.

   (a)  "Company Fiduciary Business" shall mean the business of providing fiduciary services to individuals, trusts, estates, foundations and other nonprofit entities, employee benefit plans, and corporations, partnerships and other business entities throughout North Carolina and in other states, and each and every material aspect of providing such fiduciary services.

   (b)  "Company Investment Management Business" shall mean the business of providing investment management services to individuals, trusts, estates, foundations and other nonprofit entities, employee benefit plans, and corporations, partnerships and other business entities throughout North Carolina and in other states, and each and every material aspect of providing such investment management services.

   (c)  "Restricted Territory" shall mean the State of North Carolina.

   (d)  "Restricted Client" shall mean each person (including, without limitation, each individual, trust, trustee, estate, executor, foundation or other nonprofit entity, employee benefit plan, and corporation, partnership or other business entity) (i) who is a client of the Trust Company at the time of termination of Employee's employment or (ii) who was a client at any time during the one-year period prior to the termination of Employee's employment or (iii) who

1

Case 3:07-cv-00498-GCM   Document 1-1   Filed 11/21/07   Page 12 of 42

at the time of termination of Employee's employment was a prospective client listed on the Trust Company's "highest priority" prospect list or its "work-in-process" prospect list.

(e)    "Restricted Territory Client" shall mean a Restricted Client having a residence in the Restricted Territory (in the case of an individual) or having a place of business in the Restricted Territory (in the case of an entity).

2.    Restrictions on Competition and Solicitation.  During Employee's employment by the Trust Company and, if Employee terminates employment with the Trust Company voluntarily or if the employment of Employee is terminated by the Trust Company for cause, as determined in good faith by the Board of Directors of the Trust Company, for a period of 12 months following such termination:

(a)    Employee will not, directly or indirectly through others, within the Restricted Territory:

(i)    Engage in the Company Fiduciary Business or any material aspect thereof for Employee's own account, as an employee or in any other capacity, including, without limitation, as a partner, officer, director, member, manager, principal, agent, trustee or consultant; or

(ii)    Engage in the Company Investment Management Business or any material aspect thereof for Employee's own account, as an employee or in any other capacity, including, without limitation, as a partner, officer, director, member, manager, principal, agent, trustee or consultant;

provided, however, that nothing herein shall prevent Employee from being employed by or affiliated with any person or entity if Employee's duties and responsibilities for such person or entity are unrelated to any material aspect of the Company Fiduciary Business or the Company Investment Management Business and provided further that nothing herein shall prevent Employee from being a passive investor in any entity; and

(b)    Employee will not, directly or indirectly through others, within the Restricted Territory or elsewhere:

(i)    Provide investment management services or fiduciary services of the type then offered by the Trust Company to or for any Restricted Client or supervise, manage or otherwise assist in the rendering of any such services to or for a Restricted Client;

(ii)    Provide investment management services or fiduciary services of the type then offered by the Trust Company to or for any Restricted Territory Client or supervise, manage or otherwise assist in the rendering of any such services to or for a Restricted Territory Client;

2

(iii)    Call upon or cause to be called upon, or solicit or assist in the solicitation of, any Restricted Client for the purpose of providing to the Restricted Client any investment management services or fiduciary services of the type then offered by the Trust Company;

(iv)    Call upon or cause to be called upon, or solicit or assist in the solicitation of, any Restricted Territory Client for the purpose of providing to the Restricted Territory Client any investment management services or fiduciary services of the type then offered by the Trust Company;

(v)    Influence or persuade or attempt to influence or persuade any Restricted Client to terminate his, her or its relationship with the Trust Company or otherwise interfere or attempt to interfere with the relationship between the Trust Company and any Restricted Client;

(vi)    Influence or persuade or attempt to influence or persuade any Restricted Territory Client to terminate his, her or its relationship with the Trust Company or otherwise interfere or attempt to interfere with the relationship between the Trust Company and any Restricted Territory Client; or

(vii)    Call upon or cause to be called upon, or solicit or assist in the solicitation of, any employee of the Trust Company for the purpose of persuading or influencing the employee to terminate his or her employment with the Trust Company;

Each of the foregoing covenants in this Section 2 is separate and independent, and the invalidity or unenforceability of one or more of these covenants shall not affect the validity or enforceability of any remaining covenant.

3.    <u>Acknowledgments</u>.  Employee acknowledges that (a) as an officer and key management employee of the Trust Company, Employee has access to the Trust Company's client lists, operational methods and processes, marketing plans and strategies, product development plans and strategies and other similar information and that the Trust Company would suffer a competitive disadvantage in the event of Employee's involvement in the Company Fiduciary Business, the Company Investment Management Business or any material aspect thereof in the Restricted Territory during the 12-month period following termination of employment; (b) client relationships and the goodwill associated therewith and employee relationships and the goodwill associated therewith are valuable assets of the Trust Company; and (c) the Trust Company's primary client base is in the State of North Carolina but the nature of its business and the technology in which it has invested permits the Trust Company to serve clients in other states, including, but not limited to, Virginia, South Carolina, Florida and Tennessee.  Employee further acknowledges having the ability, skills and experience to support

3

himself or herself other than by engaging in the Company Fiduciary Business or the Company Investment Management Business.

4.  Reasonableness of Restrictions; Blue Pencil Doctrine. Employee agrees that the restrictions on competition and solicitation set forth in this Agreement are reasonable in scope, in time, in territory and in all other respects and are reasonable and necessary to protect legitimate competitive interests and client and employee relationships of the Trust Company. Employee further acknowledges the uncertainty of the law respecting restrictions on competition and solicitation and expressly agrees that this Agreement shall be given the construction that renders its provisions valid and enforceable to the maximum extent (not exceeding its express terms) possible under applicable law. Without limiting the generality of the foregoing agreement by Employee, if the duration or geographical extent of, or business activities covered by, this Agreement are in excess of what is valid and enforceable under applicable law, then the duration, geographical extent or business activities shall be reduced or limited to the extent necessary so that this Agreement will be valid and enforceable.

5.  Remedies; Tolling. If Employee breaches, or threatens to breach, any of the restrictions on competition and solicitation contained in this Agreement (the "Restrictions"), the Trust Company shall have the following rights and remedies, each of which shall be independent of the others and severally enforceable, and each of which is in addition to, and not in lieu of, any other rights and remedies available to the Trust Company under law or in equity:

(a)  The right to have an injunction issued by any court of competent jurisdiction for the purpose of specifically enforcing the Restrictions, it being agreed that any breach or threatened breach would cause irreparable injury to the Trust Company and that money damages would not provide an adequate remedy;

(b)  The right to other equitable relief, including without limitation the right to an accounting with respect to all compensation, profits, and other benefits derived or received by the Employee (or by any person, firm, corporation or other entity on whose behalf the Employee acted) as the result of any breach of the Restrictions; and

(c)  The right to recover from Employee such reasonable attorneys' fees and other costs and expenses as the Trust Company may incur in enforcing this Agreement.

If Employee shall violate any of the Restrictions, such violation shall toll the running of the twelve-month period described in Section 2 above from the date of the violation until the violation shall cease.

6.  Change in Control. Notwithstanding the foregoing provisions of this Agreement, all obligations of Employee under this Agreement shall terminate upon a "Change in Control of the Trust Company." A "Change in Control of the Trust Company" shall be deemed to have occurred if (a) any "person" (as such term is used in Sections 13(d) and 14(d) of the Securities Exchange Act of 1934) other than NCT Holdings, Inc. becomes the beneficial owner, directly or

4

indirectly, of more than 66-2/3% of the combined voting power of the Trust Company's outstanding securities having the right to vote at elections of directors or (b) at any election of directors of the Trust Company, the majority of those directors in office immediately before the election are not reelected, unless the election of each director who was not a director immediately before the election was approved in advance by at least a two-thirds majority of those directors who were in office immediately before the election.

7. <u>Entire Agreement</u>. This Agreement contains the entire agreement and understanding of the parties with respect to noncompetition and nonsolicitation and supersedes and replaces all prior agreements and understandings with respect thereto; provided, however, that all prior agreements between Employee and the Trust Company with respect to confidentiality and nondisclosure shall remain in full force and effect.

8. <u>No Employment Contract</u>. Nothing contained in this Agreement shall affect the at-will nature of the Employee's employment and the right of the Trust Company or the right of Employee to terminate Employee's employment at any time and for any reason or no reason.

9. <u>Miscellaneous</u>. This Agreement shall inure to the benefit of the Trust Company and its successors and assigns and shall be construed in accordance with and governed by the laws of the State of North Carolina.

IN WITNESS WHEREOF, this Agreement is signed by Employee as of the day first above written.

ANTHONY P. MONFORTON

ACKNOWLEDGMENT

Employee hereby acknowledges receipt from NCT Holdings, Inc. of a Stock Option Agreement covering 2,500 shares of its Class A Common Stock.

ANTHONY P. MONFORTON

5

# NONCOMPETITION AND NONSOLICITATION AGREEMENT

THIS NONCOMPETITION AND NONSOLICITATION AGREEMENT is made and entered into as of February 18, 1998, by and between North Carolina Trust Company, a North Carolina corporation (the "Trust Company"), and VIRGINIA B. SASLOW, an officer and employee of the Trust Company ("Employee").

## RECITAL

On February 18, 1998, the Board of Directors of NCT Holdings, Inc. (of which the Trust Company is a wholly owned subsidiary) granted a stock option to Employee in recognition of Employee's value as an officer and key management employee of the Trust Company. The grant was made subject to the Employee entering into this Agreement and agreeing to the restrictions on competition and solicitation set forth herein.

NOW, THEREFORE, in consideration of the stock option granted to Employee and in consideration of the execution and delivery by NCT Holdings, Inc. of the Stock Option Agreement of even date herewith evidencing the option, Employee agrees as follows:

1.  Definitions.

    (a)  "Company Fiduciary Business" shall mean the business of providing fiduciary services to individuals, trusts, estates, foundations and other nonprofit entities, employee benefit plans, and corporations, partnerships and other business entities throughout North Carolina and in other states, and each and every material aspect of providing such fiduciary services.

    (b)  "Company Investment Management Business" shall mean the business of providing investment management services to individuals, trusts, estates, foundations and other nonprofit entities, employee benefit plans, and corporations, partnerships and other business entities throughout North Carolina and in other states, and each and every material aspect of providing such investment management services.

    (c)  "Restricted Territory" shall mean the State of North Carolina.

    (d)  "Restricted Client" shall mean each person (including, without limitation, each individual, trust, trustee, estate, executor, foundation or other nonprofit entity, employee benefit plan, and corporation, partnership or other business entity) (i) who is a client of the Trust Company at the time of termination of Employee's employment or (ii) who was a client at any time during the one-year period prior to the termination of Employee's employment or (iii) who

1

at the time of termination of Employee's employment was a prospective client listed on the Trust Company's "highest priority" prospect list or its "work-in-process" prospect list.

(e) "Restricted Territory Client" shall mean a Restricted Client having a residence in the Restricted Territory (in the case of an individual) or having a place of business in the Restricted Territory (in the case of an entity).

2. Restrictions on Competition and Solicitation. During Employee's employment by the Trust Company and, if Employee terminates employment with the Trust Company voluntarily or if the employment of Employee is terminated by the Trust Company for cause, as determined in good faith by the Board of Directors of the Trust Company, for a period of 12 months following such termination:

(a) Employee will not, directly or indirectly through others, within the Restricted Territory:

(i) Engage in the Company Fiduciary Business or any material aspect thereof for Employee's own account, as an employee or in any other capacity, including, without limitation, as a partner, officer, director, member, manager, principal, agent, trustee or consultant; or

(ii) Engage in the Company Investment Management Business or any material aspect thereof for Employee's own account, as an employee or in any other capacity, including, without limitation, as a partner, officer, director, member, manager, principal, agent, trustee or consultant;

provided, however, that nothing herein shall prevent Employee from being employed by or affiliated with any person or entity if Employee's duties and responsibilities for such person or entity are unrelated to any material aspect of the Company Fiduciary Business or the Company Investment Management Business and provided further that nothing herein shall prevent Employee from being a passive investor in any entity; and

(b) Employee will not, directly or indirectly through others, within the Restricted Territory or elsewhere:

(i) Provide investment management services or fiduciary services of the type then offered by the Trust Company to or for any Restricted Client or supervise, manage or otherwise assist in the rendering of any such services to or for a Restricted Client;

(ii) Provide investment management services or fiduciary services of the type then offered by the Trust Company to or for any Restricted Territory Client or supervise, manage or otherwise assist in the rendering of any such services to or for a Restricted Territory Client;

2

Case 3:07-cv-00498-GCM    Document 1-1    Filed 11/21/07    Page 18 of 42

(iii)   Call upon or cause to be called upon, or solicit or assist in the solicitation of, any Restricted Client for the purpose of providing to the Restricted Client any investment management services or fiduciary services of the type then offered by the Trust Company;

(iv)   Call upon or cause to be called upon, or solicit or assist in the solicitation of, any Restricted Territory Client for the purpose of providing to the Restricted Territory Client any investment management services or fiduciary services of the type then offered by the Trust Company;

(v)   Influence or persuade or attempt to influence or persuade any Restricted Client to terminate his, her or its relationship with the Trust Company or otherwise interfere or attempt to interfere with the relationship between the Trust Company and any Restricted Client;

(vi)   Influence or persuade or attempt to influence or persuade any Restricted Territory Client to terminate his, her or its relationship with the Trust Company or otherwise interfere or attempt to interfere with the relationship between the Trust Company and any Restricted Territory Client; or

(vii)   Call upon or cause to be called upon, or solicit or assist in the solicitation of, any employee of the Trust Company for the purpose of persuading or influencing the employee to terminate his or her employment with the Trust Company;

Each of the foregoing covenants in this Section 2 is separate and independent, and the invalidity or unenforceability of one or more of these covenants shall not affect the validity or enforceability of any remaining covenant.

3.   Acknowledgments.   Employee acknowledges that (a) as an officer and key management employee of the Trust Company, Employee has access to the Trust Company's client lists, operational methods and processes, marketing plans and strategies, product development plans and strategies and other similar information and that the Trust Company would suffer a competitive disadvantage in the event of Employee's involvement in the Company Fiduciary Business, the Company Investment Management Business or any material aspect thereof in the Restricted Territory during the 12-month period following termination of employment; (b) client relationships and the goodwill associated therewith and employee relationships and the goodwill associated therewith are valuable assets of the Trust Company; and (c) the Trust Company's primary client base is in the State of North Carolina but the nature of its business and the technology in which it has invested permits the Trust Company to serve clients in other states, including, but not limited to, Virginia, South Carolina, Florida and Tennessee. Employee further acknowledges having the ability, skills and experience to support

3

himself or herself other than by engaging in the Company Fiduciary Business or the Company Investment Management Business.

4. **Reasonableness of Restrictions; Blue Pencil Doctrine.** Employee agrees that the restrictions on competition and solicitation set forth in this Agreement are reasonable in scope, in time, in territory and in all other respects and are reasonable and necessary to protect legitimate competitive interests and client and employee relationships of the Trust Company. Employee further acknowledges the uncertainty of the law respecting restrictions on competition and solicitation and expressly agrees that this Agreement shall be given the construction that renders its provisions valid and enforceable to the maximum extent (not exceeding its express terms) possible under applicable law. Without limiting the generality of the foregoing agreement by Employee, if the duration or geographical extent of, or business activities covered by, this Agreement are in excess of what is valid and enforceable under applicable law, then the duration, geographical extent or business activities shall be reduced or limited to the extent necessary so that this Agreement will be valid and enforceable.

5. **Remedies; Tolling.** If Employee breaches, or threatens to breach, any of the restrictions on competition and solicitation contained in this Agreement (the "Restrictions"), the Trust Company shall have the following rights and remedies, each of which shall be independent of the others and severally enforceable, and each of which is in addition to, and not in lieu of, any other rights and remedies available to the Trust Company under law or in equity:

(a) The right to have an injunction issued by any court of competent jurisdiction for the purpose of specifically enforcing the Restrictions, it being agreed that any breach or threatened breach would cause irreparable injury to the Trust Company and that money damages would not provide an adequate remedy;

(b) The right to other equitable relief, including without limitation the right to an accounting with respect to all compensation, profits, and other benefits derived or received by the Employee (or by any person, firm, corporation or other entity on whose behalf the Employee acted) as the result of any breach of the Restrictions; and

(c) The right to recover from Employee such reasonable attorneys' fees and other costs and expenses as the Trust Company may incur in enforcing this Agreement.

If Employee shall violate any of the Restrictions, such violation shall toll the running of the twelve-month period described in Section 2 above from the date of the violation until the violation shall cease.

6. **Change in Control.** Notwithstanding the foregoing provisions of this Agreement, all obligations of Employee under this Agreement shall terminate upon a "Change in Control of the Trust Company." A "Change in Control of the Trust Company" shall be deemed to have occurred if (a) any "person" (as such term is used in Sections 13(d) and 14(d) of the Securities Exchange Act of 1934) other than NCT Holdings, Inc. becomes the beneficial owner, directly or

4

Case 3:07-cv-00498-GCM   Document 1-1   Filed 11/21/07   Page 20 of 42

indirectly, of more than 66-2/3% of the combined voting power of the Trust Company's outstanding securities having the right to vote at elections of directors or (b) at any election of directors of the Trust Company, the majority of those directors in office immediately before the election are not reelected, unless the election of each director who was not a director immediately before the election was approved in advance by at least a two-thirds majority of those directors who were in office immediately before the election.

7.    Entire Agreement. This Agreement contains the entire agreement and understanding of the parties with respect to noncompetition and nonsolicitation and supersedes and replaces all prior agreements and understandings with respect thereto; provided, however, that all prior agreements between Employee and the Trust Company with respect to confidentiality and nondisclosure shall remain in full force and effect.

8.    No Employment Contract. Nothing contained in this Agreement shall affect the at-will nature of the Employee's employment and the right of the Trust Company or the right of Employee to terminate Employee's employment at any time and for any reason or no reason.

9.    Miscellaneous. This Agreement shall inure to the benefit of the Trust Company and its successors and assigns and shall be construed in accordance with and governed by the laws of the State of North Carolina.

IN WITNESS WHEREOF, this Agreement is signed by Employee as of the day first above written.

_Virginia Saslow_

VIRGINIA B. SASLOW

## ACKNOWLEDGMENT

Employee hereby acknowledges receipt from NCT Holdings, Inc. of a Stock Option Agreement covering 750 shares of its Class A Common Stock.

_Virginia Saslow_

VIRGINIA B. SASLOW

5

## NONCOMPETITION AND NONSOLICITATION AGREEMENT

THIS NONCOMPETITION AND NONSOLICITATION AGREEMENT is made and entered into as of February 18, 1998, by and between North Carolina Trust Company, a North Carolina corporation (the "Trust Company"), and WILLIAM W. WATSON, an officer and employee of the Trust Company ("Employee").

### RECITAL

On February 18, 1998, the Board of Directors of NCT Holdings, Inc. (of which the Trust Company is a wholly owned subsidiary) granted a stock option to Employee in recognition of Employee's value as an officer and key management employee of the Trust Company. The grant was made subject to the Employee entering into this Agreement and agreeing to the restrictions on competition and solicitation set forth herein.

NOW, THEREFORE, in consideration of the stock option granted to Employee and in consideration of the execution and delivery by NCT Holdings, Inc. of the Stock Option Agreement of even date herewith evidencing the option, Employee agrees as follows:

1.     Definitions.

(a)     "Company Fiduciary Business" shall mean the business of providing fiduciary services to individuals, trusts, estates, foundations and other nonprofit entities, employee benefit plans, and corporations, partnerships and other business entities throughout North Carolina and in other states, and each and every material aspect of providing such fiduciary services.

(b)     "Company Investment Management Business" shall mean the business of providing investment management services to individuals, trusts, estates, foundations and other nonprofit entities, employee benefit plans, and corporations, partnerships and other business entities throughout North Carolina and in other states, and each and every material aspect of providing such investment management services.

(c)     "Restricted Territory" shall mean the State of North Carolina.

(d)     "Restricted Client" shall mean each person (including, without limitation, each individual, trust, trustee, estate, executor, foundation or other nonprofit entity, employee benefit plan, and corporation, partnership or other business entity) (i) who is a client of the Trust Company at the time of termination of Employee's employment or (ii) who was a client at any time during the one-year period prior to the termination of Employee's employment or (iii) who

1

at the time of termination of Employee's employment was a prospective client listed on the Trust Company's "highest priority" prospect list or its "work-in-process" prospect list.

(e)   "Restricted Territory Client" shall mean a Restricted Client having a residence in the Restricted Territory (in the case of an individual) or having a place of business in the Restricted Territory (in the case of an entity).

2.   Restrictions on Competition and Solicitation.  During Employee's employment by the Trust Company and, if Employee terminates employment with the Trust Company voluntarily or if the employment of Employee is terminated by the Trust Company for cause, as determined in good faith by the Board of Directors of the Trust Company, for a period of 12 months following such termination:

(a)   Employee will not, directly or indirectly through others, within the Restricted Territory:

(i)   Engage in the Company Fiduciary Business or any material aspect thereof for Employee's own account, as an employee or in any other capacity, including, without limitation, as a partner, officer, director, member, manager, principal, agent, trustee or consultant; or

(ii)   Engage in the Company Investment Management Business or any material aspect thereof for Employee's own account, as an employee or in any other capacity, including, without limitation, as a partner, officer, director, member, manager, principal, agent, trustee or consultant;

provided, however, that nothing herein shall prevent Employee from being employed by or affiliated with any person or entity if Employee's duties and responsibilities for such person or entity are unrelated to any material aspect of the Company Fiduciary Business or the Company Investment Management Business and provided further that nothing herein shall prevent Employee from being a passive investor in any entity; and

(b)   Employee will not, directly or indirectly through others, within the Restricted Territory or elsewhere:

(i)   Provide investment management services or fiduciary services of the type then offered by the Trust Company to or for any Restricted Client or supervise, manage or otherwise assist in the rendering of any such services to or for a Restricted Client;

(ii)   Provide investment management services or fiduciary services of the type then offered by the Trust Company to or for any Restricted Territory Client or supervise, manage or otherwise assist in the rendering of any such services to or for a Restricted Territory Client;

2

(iii)     Call upon or cause to be called upon, or solicit or assist in the solicitation of, any Restricted Client for the purpose of providing to the Restricted Client any investment management services or fiduciary services of the type then offered by the Trust Company;

(iv)     Call upon or cause to be called upon, or solicit or assist in the solicitation of, any Restricted Territory Client for the purpose of providing to the Restricted Territory Client any investment management services or fiduciary services of the type then offered by the Trust Company;

(v)     Influence or persuade or attempt to influence or persuade any Restricted Client to terminate his, her or its relationship with the Trust Company or otherwise interfere or attempt to interfere with the relationship between the Trust Company and any Restricted Client;

(vi)     Influence or persuade or attempt to influence or persuade any Restricted Territory Client to terminate his, her or its relationship with the Trust Company or otherwise interfere or attempt to interfere with the relationship between the Trust Company and any Restricted Territory Client; or

(vii)     Call upon or cause to be called upon, or solicit or assist in the solicitation of, any employee of the Trust Company for the purpose of persuading or influencing the employee to terminate his or her employment with the Trust Company;

Each of the foregoing covenants in this Section 2 is separate and independent, and the invalidity or unenforceability of one or more of these covenants shall not affect the validity or enforceability of any remaining covenant.

3.     Acknowledgments. Employee acknowledges that (a) as an officer and key management employee of the Trust Company, Employee has access to the Trust Company's client lists, operational methods and processes, marketing plans and strategies, product development plans and strategies and other similar information and that the Trust Company would suffer a competitive disadvantage in the event of Employee's involvement in the Company Fiduciary Business, the Company Investment Management Business or any material aspect thereof in the Restricted Territory during the 12-month period following termination of employment; (b) client relationships and the goodwill associated therewith and employee relationships and the goodwill associated therewith are valuable assets of the Trust Company; and (c) the Trust Company's primary client base is in the State of North Carolina but the nature of its business and the technology in which it has invested permits the Trust Company to serve clients in other states, including, but not limited to, Virginia, South Carolina, Florida and Tennessee. Employee further acknowledges having the ability, skills and experience to support

3

himself or herself other than by engaging in the Company Fiduciary Business or the Company Investment Management Business.

4. Reasonableness of Restrictions; Blue Pencil Doctrine. Employee agrees that the restrictions on competition and solicitation set forth in this Agreement are reasonable in scope, in time, in territory and in all other respects and are reasonable and necessary to protect legitimate competitive interests and client and employee relationships of the Trust Company. Employee further acknowledges the uncertainty of the law respecting restrictions on competition and solicitation and expressly agrees that this Agreement shall be given the construction that renders its provisions valid and enforceable to the maximum extent (not exceeding its express terms) possible under applicable law. Without limiting the generality of the foregoing agreement by Employee, if the duration or geographical extent of, or business activities covered by, this Agreement are in excess of what is valid and enforceable under applicable law, then the duration, geographical extent or business activities shall be reduced or limited to the extent necessary so that this Agreement will be valid and enforceable.

5. Remedies; Tolling. If Employee breaches, or threatens to breach, any of the restrictions on competition and solicitation contained in this Agreement (the "Restrictions"), the Trust Company shall have the following rights and remedies, each of which shall be independent of the others and severally enforceable, and each of which is in addition to, and not in lieu of, any other rights and remedies available to the Trust Company under law or in equity:

(a) The right to have an injunction issued by any court of competent jurisdiction for the purpose of specifically enforcing the Restrictions, it being agreed that any breach or threatened breach would cause irreparable injury to the Trust Company and that money damages would not provide an adequate remedy;

(b) The right to other equitable relief, including without limitation the right to an accounting with respect to all compensation, profits, and other benefits derived or received by the Employee (or by any person, firm, corporation or other entity on whose behalf the Employee acted) as the result of any breach of the Restrictions; and

(c) The right to recover from Employee such reasonable attorneys' fees and other costs and expenses as the Trust Company may incur in enforcing this Agreement.

If Employee shall violate any of the Restrictions, such violation shall toll the running of the twelve-month period described in Section 2 above from the date of the violation until the violation shall cease.

6. Change in Control. Notwithstanding the foregoing provisions of this Agreement, all obligations of Employee under this Agreement shall terminate upon a "Change in Control of the Trust Company." A "Change in Control of the Trust Company" shall be deemed to have occurred if (a) any "person" (as such term is used in Sections 13(d) and 14(d) of the Securities Exchange Act of 1934) other than NCT Holdings, Inc. becomes the beneficial owner, directly or

4

indirectly, of more than 66-2/3% of the combined voting power of the Trust Company's outstanding securities having the right to vote at elections of directors or (b) at any election of directors of the Trust Company, the majority of those directors in office immediately before the election are not reelected, unless the election of each director who was not a director immediately before the election was approved in advance by at least a two-thirds majority of those directors who were in office immediately before the election.

7.     Entire Agreement. This Agreement contains the entire agreement and understanding of the parties with respect to noncompetition and nonsolicitation and supersedes and replaces all prior agreements and understandings with respect thereto; provided, however, that all prior agreements between Employee and the Trust Company with respect to confidentiality and nondisclosure shall remain in full force and effect.

8.     No Employment Contract. Nothing contained in this Agreement shall affect the at-will nature of the Employee's employment and the right of the Trust Company or the right of Employee to terminate Employee's employment at any time and for any reason or no reason.

9.     Miscellaneous. This Agreement shall inure to the benefit of the Trust Company and its successors and assigns and shall be construed in accordance with and governed by the laws of the State of North Carolina.

IN WITNESS WHEREOF, this Agreement is signed by Employee as of the day first above written.

*William W. Watson*

WILLIAM W. WATSON

## ACKNOWLEDGMENT

Employee hereby acknowledges receipt from NCT Holdings, Inc. of a Stock Option Agreement covering 750 shares of its Class A Common Stock.

*William W. Watson*

WILLIAM W. WATSON

5

Case 3:07-cv-00498-GCM    Document 1-1    Filed 11/21/07    Page 26 of 42

# NONCOMPETITION AND NONSOLICITATION AGREEMENT

THIS NONCOMPETITION AND NONSOLICITATION AGREEMENT is made and entered into as of February 18, 1998, by and between North Carolina Trust Company, a North Carolina corporation (the "Trust Company"), and JOHN W. WILKS, an officer and employee of the Trust Company ("Employee").

## RECITAL

On February 18, 1998, the Board of Directors of NCT Holdings, Inc. (of which the Trust Company is a wholly owned subsidiary) granted a stock option to Employee in recognition of Employee's value as an officer and key management employee of the Trust Company. The grant was made subject to the Employee entering into this Agreement and agreeing to the restrictions on competition and solicitation set forth herein.

NOW, THEREFORE, in consideration of the stock option granted to Employee and in consideration of the execution and delivery by NCT Holdings, Inc. of the Stock Option Agreement of even date herewith evidencing the option, Employee agrees as follows:

1.     Definitions.

    (a)    "Company Fiduciary Business" shall mean the business of providing fiduciary services to individuals, trusts, estates, foundations and other nonprofit entities, employee benefit plans, and corporations, partnerships and other business entities throughout North Carolina and in other states, and each and every material aspect of providing such fiduciary services.

    (b)    "Company Investment Management Business" shall mean the business of providing investment management services to individuals, trusts, estates, foundations and other nonprofit entities, employee benefit plans, and corporations, partnerships and other business entities throughout North Carolina and in other states, and each and every material aspect of providing such investment management services.

    (c)    "Restricted Territory" shall mean the State of North Carolina.

    (d)    "Restricted Client" shall mean each person (including, without limitation, each individual, trust, trustee, estate, executor, foundation or other nonprofit entity, employee benefit plan, and corporation, partnership or other business entity) (i) who is a client of the Trust Company at the time of termination of Employee's employment or (ii) who was a client at any time during the one-year period prior to the termination of Employee's employment or (iii) who

1

Case 3:07-cv-00498-GCM   Document 1-1   Filed 11/21/07   Page 27 of 42

at the time of termination of Employee's employment was a prospective client listed on the Trust Company's "highest priority" prospect list or its "work-in-process" prospect list.

(e) "Restricted Territory Client" shall mean a Restricted Client having a residence in the Restricted Territory (in the case of an individual) or having a place of business in the Restricted Territory (in the case of an entity).

2. Restrictions on Competition and Solicitation. During Employee's employment by the Trust Company and, if Employee terminates employment with the Trust Company voluntarily or if the employment of Employee is terminated by the Trust Company for cause, as determined in good faith by the Board of Directors of the Trust Company, for a period of 12 months following such termination:

(a) Employee will not, directly or indirectly through others, within the Restricted Territory:

(i) Engage in the Company Fiduciary Business or any material aspect thereof for Employee's own account, as an employee or in any other capacity, including, without limitation, as a partner, officer, director, member, manager, principal, agent, trustee or consultant; or

(ii) Engage in the Company Investment Management Business or any material aspect thereof for Employee's own account, as an employee or in any other capacity, including, without limitation, as a partner, officer, director, member, manager, principal, agent, trustee or consultant;

provided, however, that nothing herein shall prevent Employee from being employed by or affiliated with any person or entity if Employee's duties and responsibilities for such person or entity are unrelated to any material aspect of the Company Fiduciary Business or the Company Investment Management Business and provided further that nothing herein shall prevent Employee from being a passive investor in any entity; and

(b) Employee will not, directly or indirectly through others, within the Restricted Territory or elsewhere:

(i) Provide investment management services or fiduciary services of the type then offered by the Trust Company to or for any Restricted Client or supervise, manage or otherwise assist in the rendering of any such services to or for a Restricted Client;

(ii) Provide investment management services or fiduciary services of the type then offered by the Trust Company to or for any Restricted Territory Client or supervise, manage or otherwise assist in the rendering of any such services to or for a Restricted Territory Client;

2

(iii)    Call upon or cause to be called upon, or solicit or assist in the solicitation of, any Restricted Client for the purpose of providing to the Restricted Client any investment management services or fiduciary services of the type then offered by the Trust Company;

(iv)    Call upon or cause to be called upon, or solicit or assist in the solicitation of, any Restricted Territory Client for the purpose of providing to the Restricted Territory Client any investment management services or fiduciary services of the type then offered by the Trust Company;

(v)    Influence or persuade or attempt to influence or persuade any Restricted Client to terminate his, her or its relationship with the Trust Company or otherwise interfere or attempt to interfere with the relationship between the Trust Company and any Restricted Client;

(vi)    Influence or persuade or attempt to influence or persuade any Restricted Territory Client to terminate his, her or its relationship with the Trust Company or otherwise interfere or attempt to interfere with the relationship between the Trust Company and any Restricted Territory Client; or

(vii)    Call upon or cause to be called upon, or solicit or assist in the solicitation of, any employee of the Trust Company for the purpose of persuading or influencing the employee to terminate his or her employment with the Trust Company;

Each of the foregoing covenants in this Section 2 is separate and independent, and the invalidity or unenforceability of one or more of these covenants shall not affect the validity or enforceability of any remaining covenant.

3.    Acknowledgments. Employee acknowledges that (a) as an officer and key management employee of the Trust Company, Employee has access to the Trust Company's client lists, operational methods and processes, marketing plans and strategies, product development plans and strategies and other similar information and that the Trust Company would suffer a competitive disadvantage in the event of Employee's involvement in the Company Fiduciary Business, the Company Investment Management Business or any material aspect thereof in the Restricted Territory during the 12-month period following termination of employment; (b) client relationships and the goodwill associated therewith and employee relationships and the goodwill associated therewith are valuable assets of the Trust Company; and (c) the Trust Company's primary client base is in the State of North Carolina but the nature of its business and the technology in which it has invested permits the Trust Company to serve clients in other states, including, but not limited to, Virginia, South Carolina, Florida and Tennessee.  Employee further acknowledges having the ability, skills and experience to support

3

himself or herself other than by engaging in the Company Fiduciary Business or the Company Investment Management Business.

4. _Reasonableness of Restrictions; Blue Pencil Doctrine._ Employee agrees that the restrictions on competition and solicitation set forth in this Agreement are reasonable in scope, in time, in territory and in all other respects and are reasonable and necessary to protect legitimate competitive interests and client and employee relationships of the Trust Company. Employee further acknowledges the uncertainty of the law respecting restrictions on competition and solicitation and expressly agrees that this Agreement shall be given the construction that renders its provisions valid and enforceable to the maximum extent (not exceeding its express terms) possible under applicable law. Without limiting the generality of the foregoing agreement by Employee, if the duration or geographical extent of, or business activities covered by, this Agreement are in excess of what is valid and enforceable under applicable law, then the duration, geographical extent or business activities shall be reduced or limited to the extent necessary so that this Agreement will be valid and enforceable.

5. _Remedies; Tolling._ If Employee breaches, or threatens to breach, any of the restrictions on competition and solicitation contained in this Agreement (the "Restrictions"), the Trust Company shall have the following rights and remedies, each of which shall be independent of the others and severally enforceable, and each of which is in addition to, and not in lieu of, any other rights and remedies available to the Trust Company under law or in equity:

(a) The right to have an injunction issued by any court of competent jurisdiction for the purpose of specifically enforcing the Restrictions, it being agreed that any breach or threatened breach would cause irreparable injury to the Trust Company and that money damages would not provide an adequate remedy;

(b) The right to other equitable relief, including without limitation the right to an accounting with respect to all compensation, profits, and other benefits derived or received by the Employee (or by any person, firm, corporation or other entity on whose behalf the Employee acted) as the result of any breach of the Restrictions; and

(c) The right to recover from Employee such reasonable attorneys' fees and other costs and expenses as the Trust Company may incur in enforcing this Agreement.

If Employee shall violate any of the Restrictions, such violation shall toll the running of the twelve-month period described in Section 2 above from the date of the violation until the violation shall cease.

6. _Change in Control._ Notwithstanding the foregoing provisions of this Agreement, all obligations of Employee under this Agreement shall terminate upon a "Change in Control of the Trust Company." A "Change in Control of the Trust Company" shall be deemed to have occurred if (a) any "person" (as such term is used in Sections 13(d) and 14(d) of the Securities Exchange Act of 1934) other than NCT Holdings, Inc. becomes the beneficial owner, directly or

4

indirectly, of more than 66-2/3% of the combined voting power of the Trust Company's outstanding securities having the right to vote at elections of directors or (b) at any election of directors of the Trust Company, the majority of those directors in office immediately before the election are not reelected, unless the election of each director who was not a director immediately before the election was approved in advance by at least a two-thirds majority of those directors who were in office immediately before the election.

7.    Entire Agreement. This Agreement contains the entire agreement and understanding of the parties with respect to noncompetition and nonsolicitation and supersedes and replaces all prior agreements and understandings with respect thereto; provided, however, that all prior agreements between Employee and the Trust Company with respect to confidentiality and nondisclosure shall remain in full force and effect.

8.    No Employment Contract. Nothing contained in this Agreement shall affect the at-will nature of the Employee's employment and the right of the Trust Company or the right of Employee to terminate Employee's employment at any time and for any reason or no reason.

9.    Miscellaneous. This Agreement shall inure to the benefit of the Trust Company and its successors and assigns and shall be construed in accordance with and governed by the laws of the State of North Carolina.

IN WITNESS WHEREOF, this Agreement is signed by Employee as of the day first above written.

_John W. Wilks_

JOHN W. WILKS

ACKNOWLEDGMENT

Employee hereby acknowledges receipt from NCT Holdings, Inc. of a Stock Option Agreement covering 1,000 shares of its Class A Common Stock.

_John W. Wilks_

JOHN W. WILKS

5

**EXHIBIT 2**

## CONSENT TO CONTINUATION OF
## NONCOMPETITION AND NONSOLICITATION AGREEMENT

The undersigned employee (the "Employee") of North Carolina Trust Company (the "Trust Company") has agreed to the restrictions on competition and solicitation set forth in the attached Noncompetition and Nonsolicitation Agreement (the "Agreement").

Section 6 of the Agreement provides that the obligations of the Employee under the Agreement will terminate upon a "Change in Control of the Trust Company" (as defined therein). The merger of NCT Holdings, Inc. ("NCT") into NCT Holdings Acquisition Company (the "Acquisition Company"), a wholly owned subsidiary of U.S. Trust Corporation ("USTC"), pursuant to the Agreement and Plan of Merger dated as of May 14, 1999 between NCT and USTC (the "Plan of Merger") will constitute a Change in Control of the Trust Company.

The Employee is the holder of nonvested options to purchase Class A Common Stock of NCT (the "Options"). Under the terms of the Options, they will terminate upon the merger of NCT into the Acquisition Company unless the Board of Directors of NCT, in its discretion, determines otherwise.

NCT and USTC have agreed to cash out the Options as provided in the Plan of Merger subject to the Employee's consent to the continuation of the Agreement.

NOW, THEREFORE, in consideration of the cash out of the Options pursuant to the Plan of Merger, the Employee hereby agrees that, immediately before the merger of NCT into the Acquisition Company pursuant to the Plan of Merger, Section 6 of the Agreement shall be deleted in its entirety and the restrictions on competition and solicitation set forth in the Agreement shall continue in full force and effect after the merger.

IN WITNESS WHEREOF, this Consent is signed by the Employee on this ⟨2nd⟩ day of August, 1999.

_M. Jo Brooks_
M. Jo Brooks

## CONSENT TO CONTINUATION OF
## NONCOMPETITION AND NONSOLICITATION AGREEMENT

The undersigned employee (the "Employee") of North Carolina Trust Company (the "Trust Company") has agreed to the restrictions on competition and solicitation set forth in the attached Noncompetition and Nonsolicitation Agreement (the "Agreement").

Section 6 of the Agreement provides that the obligations of the Employee under the Agreement will terminate upon a "Change in Control of the Trust Company" (as defined therein). The merger of NCT Holdings, Inc. ("NCT") into NCT Holdings Acquisition Company (the "Acquisition Company"), a wholly owned subsidiary of U.S. Trust Corporation ("USTC"), pursuant to the Agreement and Plan of Merger dated as of May 14, 1999 between NCT and USTC (the "Plan of Merger") will constitute a Change in Control of the Trust Company.

The Employee is the holder of nonvested options to purchase Class A Common Stock of NCT (the "Options"). Under the terms of the Options, they will terminate upon the merger of NCT into the Acquisition Company unless the Board of Directors of NCT, in its discretion, determines otherwise.

NCT and USTC have agreed to cash out the Options as provided in the Plan of Merger subject to the Employee's consent to the continuation of the Agreement.

NOW, THEREFORE, in consideration of the cash out of the Options pursuant to the Plan of Merger, the Employee hereby agrees that, immediately before the merger of NCT into the Acquisition Company pursuant to the Plan of Merger, Section 6 of the Agreement shall be deleted in its entirety and the restrictions on competition and solicitation set forth in the Agreement shall continue in full force and effect after the merger.

IN WITNESS WHEREOF, this Consent is signed by the Employee on this 9th day of August, 1999.

*Glenda R. Burkett*

Glenda R. Burkett

H:\DOCS\MRA\NCTRUST\UST\CONSNT2.WPD

## CONSENT TO CONTINUATION OF
## NONCOMPETITION AND NONSOLICITATION AGREEMENT

The undersigned employee (the "Employee") of North Carolina Trust Company (the "Trust Company") has agreed to the restrictions on competition and solicitation set forth in the attached Noncompetition and Nonsolicitation Agreement (the "Agreement").

Section 6 of the Agreement provides that the obligations of the Employee under the Agreement will terminate upon a "Change in Control of the Trust Company" (as defined therein). The merger of NCT Holdings, Inc. ("NCT") into NCT Holdings Acquisition Company (the "Acquisition Company"), a wholly owned subsidiary of U.S. Trust Corporation ("USTC"), pursuant to the Agreement and Plan of Merger dated as of May 14, 1999 between NCT and USTC (the "Plan of Merger") will constitute a Change in Control of the Trust Company.

The Employee is the holder of nonvested options to purchase Class A Common Stock of NCT (the "Options"). Under the terms of the Options, they will terminate upon the merger of NCT into the Acquisition Company unless the Board of Directors of NCT, in its discretion, determines otherwise.

NCT and USTC have agreed to cash out the Options as provided in the Plan of Merger subject to the Employee's consent to the continuation of the Agreement.

NOW, THEREFORE, in consideration of the cash out of the Options pursuant to the Plan of Merger, the Employee hereby agrees that, immediately before the merger of NCT into the Acquisition Company pursuant to the Plan of Merger, Section 6 of the Agreement shall be deleted in its entirety and the restrictions on competition and solicitation set forth in the Agreement shall continue in full force and effect after the merger.

IN WITNESS WHEREOF, this Consent is signed by the Employee on this _8_ day of August, 1999.

_Anthony P. Monfton_
Anthony P. Monforton

H:\DOCS\MRA\NCTRUST\US\T\CONSNT2.WPD

## CONSENT TO CONTINUATION OF
## NONCOMPETITION AND NONSOLICITATION AGREEMENT

The undersigned employee (the "Employee") of North Carolina Trust Company (the "Trust Company") has agreed to the restrictions on competition and solicitation set forth in the attached Noncompetition and Nonsolicitation Agreement (the "Agreement").

Section 6 of the Agreement provides that the obligations of the Employee under the Agreement will terminate upon a "Change in Control of the Trust Company" (as defined therein). The merger of NCT Holdings, Inc. ("NCT") into NCT Holdings Acquisition Company (the "Acquisition Company"), a wholly owned subsidiary of U.S. Trust Corporation ("USTC"), pursuant to the Agreement and Plan of Merger dated as of May 14, 1999 between NCT and USTC (the "Plan of Merger") will constitute a Change in Control of the Trust Company.

The Employee is the holder of nonvested options to purchase Class A Common Stock of NCT (the "Options"). Under the terms of the Options, they will terminate upon the merger of NCT into the Acquisition Company unless the Board of Directors of NCT, in its discretion, determines otherwise.

NCT and USTC have agreed to cash out the Options as provided in the Plan of Merger subject to the Employee's consent to the continuation of the Agreement.

NOW, THEREFORE, in consideration of the cash out of the Options pursuant to the Plan of Merger, the Employee hereby agrees that, immediately before the merger of NCT into the Acquisition Company pursuant to the Plan of Merger, Section 6 of the Agreement shall be deleted in its entirety and the restrictions on competition and solicitation set forth in the Agreement shall continue in full force and effect after the merger.

IN WITNESS WHEREOF, this Consent is signed by the Employee on this 16 day of August, 1999.

Virginia B. Saslow

Case 3:07-cv-00498-GCM    Document 1-1    Filed 11/21/07    Page 36 of 42

## CONSENT TO CONTINUATION OF
## NONCOMPETITION AND NONSOLICITATION AGREEMENT

The undersigned employee (the "Employee") of North Carolina Trust Company (the "Trust Company") has agreed to the restrictions on competition and solicitation set forth in the attached Noncompetition and Nonsolicitation Agreement (the "Agreement").

Section 6 of the Agreement provides that the obligations of the Employee under the Agreement will terminate upon a "Change in Control of the Trust Company" (as defined therein). The merger of NCT Holdings, Inc. ("NCT") into NCT Holdings Acquisition Company (the "Acquisition Company"), a wholly owned subsidiary of U.S. Trust Corporation ("USTC"), pursuant to the Agreement and Plan of Merger dated as of May 14, 1999 between NCT and USTC (the "Plan of Merger") will constitute a Change in Control of the Trust Company.

The Employee is the holder of nonvested options to purchase Class A Common Stock of NCT (the "Options"). Under the terms of the Options, they will terminate upon the merger of NCT into the Acquisition Company unless the Board of Directors of NCT, in its discretion, determines otherwise.

NCT and USTC have agreed to cash out the Options as provided in the Plan of Merger subject to the Employee's consent to the continuation of the Agreement.

NOW, THEREFORE, in consideration of the cash out of the Options pursuant to the Plan of Merger, the Employee hereby agrees that, immediately before the merger of NCT into the Acquisition Company pursuant to the Plan of Merger, Section 6 of the Agreement shall be deleted in its entirety and the restrictions on competition and solicitation set forth in the Agreement shall continue in full force and effect after the merger.

IN WITNESS WHEREOF, this Consent is signed by the Employee on this 15th day of August, 1999.

William W. Watson
William W. Watson

H:\DOCS\MRA\NCTRUST\TRUST\CONSNT2.WPD

## CONSENT TO CONTINUATION OF
## NONCOMPETITION AND NONSOLICITATION AGREEMENT

The undersigned employee (the "Employee") of North Carolina Trust Company (the "Trust Company") has agreed to the restrictions on competition and solicitation set forth in the attached Noncompetition and Nonsolicitation Agreement (the "Agreement").

Section 6 of the Agreement provides that the obligations of the Employee under the Agreement will terminate upon a "Change in Control of the Trust Company" (as defined therein). The merger of NCT Holdings, Inc. ("NCT") into NCT Holdings Acquisition Company (the "Acquisition Company"), a wholly owned subsidiary of U.S. Trust Corporation ("USTC"), pursuant to the Agreement and Plan of Merger dated as of May 14, 1999 between NCT and USTC (the "Plan of Merger") will constitute a Change in Control of the Trust Company.

The Employee is the holder of nonvested options to purchase Class A Common Stock of NCT (the "Options"). Under the terms of the Options, they will terminate upon the merger of NCT into the Acquisition Company unless the Board of Directors of NCT, in its discretion, determines otherwise.

NCT and USTC have agreed to cash out the Options as provided in the Plan of Merger subject to the Employee's consent to the continuation of the Agreement.

NOW, THEREFORE, in consideration of the cash out of the Options pursuant to the Plan of Merger, the Employee hereby agrees that, immediately before the merger of NCT into the Acquisition Company pursuant to the Plan of Merger, Section 6 of the Agreement shall be deleted in its entirety and the restrictions on competition and solicitation set forth in the Agreement shall continue in full force and effect after the merger.

IN WITNESS WHEREOF, this Consent is signed by the Employee on this 2<u>nd</u> day of August, 1999.

_John W. Wilks_
John W. Wilks

# EXHIBIT 3

*John R. Ricke*

*Employer I.D.# 36473*

## Employment Agreement Regarding
## Confidentiality and Non-Solicitation

In consideration of your participation in The Charles Schwab Corporation Long Term Incentive Plan and The Charles Schwab Corporation 2004 Stock Incentive Plan, as well as your employment by U.S. Trust Corporation and its subsidiaries ("U.S. Trust") and in consideration of the compensation, resources, benefits and the trade secrets and proprietary information that will be provided to you by U.S. Trust in connection with your employment, you agree as follows:

### 1. Confidential and Proprietary Information.

In connection with your employment by U.S. Trust you will have (and you hereby acknowledge you have) access to sensitive, non-public information of U.S. Trust and its clients including, but not limited to: a) client-related information (i.e. client names, client contact information, client lists, client account contents and statements, investment, estate and taxation strategies, current and historical investment performance data, etc.) b) employee, vendor and independent contractor information (i.e. names and contact information, personal and financial information, services, compensation, rate structures etc.) and c) business information of U.S. Trust (i.e. financial performance, marketing, sales, product and regulatory information etc.) (collectively "Confidential and Proprietary Information"). You agree that you will not disclose or permit or facilitate disclosure of Confidential and Proprietary Information to persons outside U.S. Trust or use such information for purposes other than as specifically authorized by U.S. Trust for purposes intended by U.S. Trust.

### 2. Non-Solicitation of Clients and Employees.

To further protect Confidential and Proprietary Information of U.S. Trust and the good will associated with the client and prospective client relationships of U.S. Trust, you agree that:

> a) during your employment with U.S. Trust, and for a period of twelve (12) months following termination of your employment with U.S. Trust, you will not, directly or indirectly, solicit or induce existing or prospective U.S. Trust clients, to whom you provided services or with respect to whom you devoted efforts seeking to provide such services, to transfer or divert business from U.S. Trust or otherwise to avoid, diminish or discontinue a relationship with U.S. Trust and

> b) during your employment with U.S. Trust, and for a period of twelve (12) months following termination of your employment with U.S. Trust, you will not, directly or indirectly, solicit, induce or encourage any U.S. Trust employee to terminate employment with U.S. Trust to join a business competitive with the businesses of U.S. Trust.

1247272.1

## 3. **Return of Records**

Immediately upon termination of your employment with U.S. Trust, you agree to return all Confidential and Proprietary Information in your possession, custody and control to U.S. Trust and provide a sworn certification attesting that you have done so.

## 4. **Arbitration**

Any dispute or claim arising out of, based upon or relating to this Agreement will be settled and finally determined by arbitration. Arbitration will be conducted before the American Arbitration Association. You further agree that, notwithstanding your agreement to arbitrate, in connection any breach or threatened breach of this Agreement, U.S. Trust may proceed first to any federal or state court of competent jurisdiction to seek temporary or preliminary injunctive relief to enforce the provisions of this Agreement in aid or support of the arbitration proceeding. An application before a court for injunctive relief shall not be construed as a waiver, by either party, of the right or obligation of the parties to resolve claims through arbitration. In the event of a breach by you of Section 2a) or 2b) of this Agreement, you agree that, in addition to all other legal and equitable remedies available to U.S. Trust, U.S. Trust shall be entitled to, as liquidated damages, and not as a penalty, an amount equal to the greater of a) the revenue received by U.S. Trust during the twelve month period immediately proceeding the termination of your employment with U.S. Trust from each client you served at U.S. Trust who has transferred or diverted business from U.S. Trust to you or to any entity with whom you have become associated or b) the revenue received by you or by any entity with whom you may be associated for the twelve month period following termination of your employment with U.S. Trust from each client you served at U.S. Trust.

## 5. **Discovery**

You agree that should U.S. Trust seek temporary or preliminary injunctive relief with regard to the breach or threatened breach by you of this Agreement, U.S. Trust shall be entitled to expedited discovery including depositions, whether or not the laws of the jurisdiction or applicable arbitration rules provide for such expedited discovery.

## 6. **Choice of Law**

This agreement shall be governed by and construed in accordance with the laws of the State of New York without reference to the principles of conflicts of law.

## 7. **Severability**

If any provision of this Agreement is found to be invalid or unenforceable, that provision or portion thereof shall be enforced to the maximum extent possible, and the remaining provisions or portions thereof shall remain in full force and effect.

## 8. **Attorneys Fees and Costs**

In the event that a party to this Agreement brings an action to enforce any provisions of the Agreement, the prevailing party shall be entitled to its attorneys' fees and costs incurred to enforce such claims.

## 9. Reconciliation with Other Agreements

This Agreement is intended to be supplemental to, and not supersede any employment agreement or other agreement that you may have entered into previously with U.S. Trust. If a provision in this Agreement conflicts with or is inconsistent with any provision in such previous agreement, you agree that the provision that is most favorable to U.S. Trust (in U.S. Trust's sole determination) shall control.

Nothing herein shall be deemed to waive and/or release you from your obligations to comply with the U.S. Trust Corporation Code of Business Conduct and Ethics and all other applicable Policies and Procedures of U.S. Trust, familiarity with which you hereby acknowledge. Further, nothing in this Agreement changes your "at will" employment status, and that either you or U.S. Trust may end the employment relationship at any time, with or without notice, for any reason or for no reason at all.

July 26, 2004
Date

_Employee Signature_
Employee Signature

_John R. Rich_
Employee Name

_____
Date

_____
U.S. Trust Entity Name

_____
By:
Its:

1247272.1